# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JANE DOE,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

U.S. DEPARTMENT OF JUSTICE,

PAMELA BONDI,
in her official capacity as Attorney General,

BRIAN BOYNTON
in his official capacity, and

STEPHEN TERRELL,
in his official capacity,

    Defendants.

CASE NO. 25-1854 C

HON. _____

## COMPLAINT

NOW COMES Plaintiff JANE DOE, by and through her attorneys, GREWAL LAW PLLC, and for the allegations of her Complaint states as follows:

### NATURE OF THE ACTION AND RELIEF SOUGHT

1. Plaintiff seeks damages and other relief through claims for breach of contract and breach of the express and implied covenants of good faith and fair dealing arising from the United States and U.S. Department of Justice's ongoing breaches of the Compromise Settlement Agreement ("Agreement" or "Settlement Agreement", attached hereto as *Exhibit A*) for Plaintiff's Federal Torts Claim Act claim.

1

2. Since reaching this Settlement Agreement, the United States, by and through the U.S. Department of Justice and its employees and/or agents, has consistently and deliberately acted in a manner inconsistent with the terms of the Settlement Agreement and have, as of the present date, denied Plaintiff of benefits bargained for therein.

## PARTIES

3. Plaintiff hereby incorporates the foregoing paragraphs as if fully re-alleged anew.

4. Plaintiff Jane Doe is an adult female and at all times relevant hereto, was a resident of the State of Michigan and a citizen of the United States.

5. Given the highly sensitive and personal nature of her claims, Plaintiff is using a pseudonym to protect her privacy. If required by this Court, Plaintiff will seek permission to proceed under this pseudonym.

6. The United States of America ("U.S.") is a Defendant in this matter, acting through the Congress and its instrumentalities and agencies, namely, the U.S. Department of Justice.

7. The U.S. Department of Justice ("DOJ") is an executive department of the U.S. government, headquartered in Washington, D.C., tasked with the enforcement and administration of federal law and related litigation.

8. Pamela J. Bondi is brought as a Defendant to this action in her official capacity as the Attorney General of the DOJ.

9. Brian Boynton, at all times relevant herein, was employed by the previous administration as an attorney with the DOJ Civil Division and acting within the scope of his employment at the time of the alleged breach.

10. Stephen Terrell, at all times relevant herein, was employed by the previous administration as an attorney with the DOJ Civil Division and acting within the scope of his employment at the time of the alleged breach.

## JURISDICTION

11. Plaintiff hereby incorporates the foregoing paragraphs as if fully re-alleged anew.

12. The United States Court of Federal Claims has jurisdiction over the subject matter of this action pursuant to the Tucker Act, 28 U.S.C. §1491(a)(1).

13. The amount in controversy is in excess of Ten Thousand Dollars ($10,000.00).

## STATEMENT OF FACTS

14. Plaintiff hereby incorporates the foregoing paragraphs as if fully re-alleged anew.

15. In or about June 2022, 111 (one-hundred eleven) women and girls (collectively referred to hereto as "Claimants") filed a Collective Administrative Claim under the Federal Tort Claims Act for personal injury arising from the Federal Bureau of Investigation's gross mishandling of its investigation into allegations of sexual abuse of U.S.A. Gymnastics' athletes by Dr. Larry Nassar.

16. Plaintiff's counsel, Grewal Law PLLC, represented 45 (forty-five) of the individual claimants to the Collective Administrative Claim.

17. After the filing of this Collective Administrative Claim, Claimants and the United States, acting through DOJ Civil Division Attorneys Brian Boynton and Stephen Terrell, agreed to mediate these 111 claims with Judge Gregory Sleet.

18. After mediation began, Plaintiff's counsel ceased representation of one of its 45 claimants.

19. Around this same time, Plaintiff retained Grewal Law PLLC to represent her for injuries consistent with those alleged in the Collective Administrative Claim.

20. On or about July 25, 2023, Plaintiff's counsel notified Judge Sleet and the DOJ that Plaintiff would be taking the place of the disengaged client and were provided with the requisite documentation for Plaintiff's claim.

21. In this same correspondence, Plaintiff's counsel reiterated the addition of Plaintiff's claim did not affect the total number of claimants—111— nor the total number of claimants represented by counsel—45.

22. At the time of this substitution, all parties were actively engaged in negotiations.

23. No objections were made as to this substitution by the United States, DOJ, DOJ Attorneys, or the Federal Bureau of Investigation.

24. Accordingly, Claimants and the DOJ continued to negotiate a settlement through mediation with Plaintiff's participation as a member of the class of Claimants.

25. On or about October 13, 2023, a Compromise Settlement Agreement was reached between the U.S. and all 111 Claimants, including Plaintiff.

26. Under the terms of this Agreement, the parties agreed to settle those claims arising from the Federal Bureau of Investigation's investigation of and response to allegations of sexual abuse by Nassar.

27. As consideration for her acceptance of the Settlement Agreement, the United States agreed to pay Plaintiff One Million Two Hundred Sixty-Seven Thousand Six Hundred Five Dollars and Sixty-Three Cents ($1,267,605.63).

28. Plaintiff signed the Compromise Settlement and Release, prepared by the DOJ, on or about December 27, 2023.

29. In or about January 2024, the DOJ advised Plaintiff that it was no longer going to settle her claim due to her inclusion after the filing of the Collective Administrative Claim.

30. Upon information and belief, this was the result of a breakdown in communication between the Federal Bureau of Investigation and DOJ Attorneys Terrell and Boynton regarding Plaintiff's inclusion as a Claimant.

31. This was the DOJ's first objection to Plaintiff's inclusion and occurred six (6) months after Plaintiff's inclusion and participation in mediation, and three (3) months after the Compromise Settlement Agreement had been reached.

32. What's more, Attorneys Terrell and Boynton threatened to withhold the settlement funds for the remaining one hundred and ten (110) Claimants unless Plaintiff agreed to temporarily set aside her claim until after the settlement funds were released for her co-Claimants.

33. Plaintiff trusted that the previous administration, particularly the DOJ and Attorneys Terrell and Boynton, was acting in good faith and would continue discussing Plaintiff's claim after funds were disbursed for the remaining Claimants.

34. After disbursements were completed, Plaintiff's counsel and Attorneys Terrell and/or Boynton continued discussions regarding Plaintiff's entitlement to settlement proceeds as a claimant included in the mediated Settlement Agreement.

35. On or about January 20, 2025, Plaintiff's counsel was notified via email that Mr. Terrell was no longer employed with the DOJ.

36. Since that time, further attempts to discuss Plaintiff's claim with the DOJ have been unsuccessful.

37. This administration has conveyed concerns about the previous administration and has demanded accountability.

38. The previous administration's failure to resolve Plaintiff's monetary compensation under the acceptance of the Agreement is another example of the need for accountability.

39. On June 2, 2025, Plaintiff's counsel sent a letter to the DOJ that was delivered on June 3, 2025, regarding wanting to discuss a resolution for Plaintiff.

40. Plaintiff's counsel hasn't received any response to date to its June 2, 2025, letter to the DOJ.

41. As a result, Plaintiff has been denied her bargained benefit as a claimant and party to the Settlement Agreement.

## COUNT I: BREACH OF CONTRACT

42. Plaintiff hereby incorporates the foregoing paragraphs as if fully re-alleged anew.

43. On October 13, 2023, the U.S., by and through its DOJ, and Claimants, including Plaintiff, voluntarily entered into a Compromise Settlement Agreement to compensate each claimant for her Federal Tort Claims Act claims related to the Federal Bureau of Investigation's negligent investigation and response to allegations of sexual abuse by Nassar.

44. The Compromise Settlement Agreement, drafted by DOJ attorneys, sets forth that the U.S. agrees to pay Plaintiff monetary compensation under specific time constraints in consideration of her acceptance to the Agreement.

45. This Agreement created a valid and binding contract between the U.S. and Plaintiff.

46. In or about January 2024, the U.S., acting through the DOJ, violated the Compromise Settlement Agreement in a manner both knowing and willful by denying Plaintiff her bargained for monetary compensation.

47. DOJ knowingly and willfully allowed its employees and/or agents, including but not limited to Attorneys Boynton and Terrell, to ignore, deny, and disregard Plaintiff's entitlement to monetary compensation as contemplated in the Agreement.

48. Thus, the U.S. has failed to substantially perform its duties assigned under the Settlement Agreement and are in breach.

49. As a result of Defendants' breach, Plaintiff has suffered and continues to suffer substantial economic losses.

## **COUNT II: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

50. Plaintiff hereby incorporates the foregoing paragraphs as if fully re-alleged anew.

51. The Compromise Settlement Agreement reached October 13, 2023, is a valid and binding contract between Plaintiff, as a claimant, and U.S.

52. As a party to the Agreement, the U.S., through its DOJ, had a common law duty of good faith and fair dealing in its performance and fulfillment.

53. DOJ, through its employees and/or agents, breached the implied covenant of good faith and fair dealing by, *inter alia*, the following:

    a. Failing to implement the Compromise Settlement Agreement in good faith.

    b. Acting in a manner inconsistent with the fundamental purpose of the Agreement.

    c. Depriving Plaintiff of the contemplated value of the Agreement.

    d. Improperly threatening to withhold monetary compensation from Plaintiff's Co-Claimants lest Plaintiff agree to temporarily set aside her claim.

    e. Failing to participate in attempts to resolve Plaintiff's claim after disbursements were made to the other Claimants, despite assurances to the contrary.

    f. Failing to avoid, mitigate, or rectify its various breaches of the Settlement Agreement and of the express and implied covenants of good faith and fair dealing.

54. By virtue of the above-described breaches of the implied covenant of good faith and fair dealing, Defendants are in breach of the Settlement Agreement.

55. As a result of Defendants' breaches, Plaintiff has suffered and continues to suffer substantial economic losses.

**PRAYER FOR RELIEF:**

Plaintiff requests that this Court enter the following relief:

A. Enter an order against Defendants awarding Plaintiff her settlement proceeds in the amount of One Million, Two Hundred Sixty-Seven Thousand, Six Hundred Five and 63/100 Dollars ($1,267,605.63).

B. Award Plaintiff her costs, reasonable attorney fees, and other disbursements as appropriate.

C. Grant such other relief as this Court deems just and proper.

Respectfully Submitted:

*/s/ Ayanna D. Neal*

Manvir S. Grewal (MI Bar No. P48082)
Ayanna D. Neal (MI Bar No. P64128)
Micaela Dalrymple (MI Bar No. P87829)
GREWAL LAW PLLC
2290 Science Parkway
Okemos, MI 48864
Ph: (517) 393-3000
E: mgrewal@4grewal.com
E: aneal@4grewal.com
E: mdalrymple@4grewal.com